Josh A. Cohen (SBN 217853)
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Tel: (415) 749-1800
Fax: (415) 749-1694
jcohen@clarencedyer.com

Attorneys for Defendant
ROSHANLAL CHAGANLAL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>   Plaintiff, <br><br>   v. <br><br> ROSHANLAL CHAGANLAL, <br><br>   Defendant. | CASE NO. CR-17-0385 HSG <br><br> **DEFENDANT CHAGANLAL'S MEMORANDUM REGARDING RESTITUTION** <br><br> Hearing Date:  October 23, 2019 |

## INTRODUCTION

Defendant Roshanlal Chaganlal's false statements to the Securities & Exchange Commission did not cause any compensable loss to Ross Stores, Inc. ("Ross"). Because Ross is not a victim of Mr. Chaganlal's offense of conviction, and because any harms Ross suffered are not proximately related to that offense, restitution from Mr. Chaganlal is not available as a matter of law.

## BACKGROUND

In September 2012, the Securities & Exchange Commission began investigating the activities of Mr. Chaganlal and Saleem Khan in connection with trades in Ross securities. On October 30, 2012, two attorneys from the SEC interviewed Mr. Chaganlal over the telephone.

1  During the interview, Mr. Chaganlal falsely stated that, while he was employed in the shortage
2  control department at Ross, he did not access or look at Ross's financial forecasts.  In reality, as he
3  has acknowledged, Mr. Chaganlal accessed such information and provided it to Mr. Khan on
4  several occasions.  Mr. Khan then used the information to buy and sell options in Ross securities.

5        Less than two months after his interview with the SEC, Ross terminated Mr. Chaganlal's
6  employment.  The SEC instituted an enforcement action against Mr. Chaganlal in 2014, which Mr.
7  Chaganlal resolved in 2016 with an agreement to pay $275,000 in disgorgement, penalties, and
8  interest.

9        Mr. Chaganlal began cooperating with the government in early 2017.  In August 2017, he
10 pled guilty to one count of providing false statements to the SEC during his October 2012
11 telephonic interview, in violation of 18 U.S.C. § 1001.  He was sentenced by this Court on August
12 26, 2019.  The Court deferred ruling on the issue of restitution.

## ARGUMENT

14       Restitution is available, appropriate, and in some cases required to compensate a victim for
15 losses suffered as a result a defendant's crimes.  *See* 18 U.S.C. §§ 3663, 3663A.  To be entitled to
16 restitution, however, a victim must have been harmed by the offense *of conviction*, and the harms
17 for which the victim seeks compensation must be proximately related to that offense.  Because
18 neither condition is satisfied here, restitution is unavailable.

19 **A.  Ross Was Not a Victim of Mr. Chaganlal's Offense**

20       For purposes of restitution, a "victim" is "a person directly and proximately harmed as a
21 result of the commission of an offense for which restitution may be ordered." 18 U.S.C. §
22 3663(a)(2).  To determine whether an individual or entity was a victim of the defendant's offense,
23 courts look only at the offense of conviction.  *See United States v. Gamma Tech Indus., Inc.*, 265
24 F.3d 917, 927 (9th Cir. 2001) ("A victim for restitution purposes is a person who has suffered a
25 'loss caused by the specific conduct that is the basis of the offense of conviction.'") (quoting
26 *Hughey v. United States*, 495 U.S. 411, 413 (1990)); *United States v. Dorcely*, 454 F.3d 366, 376-
27 77 (D.C. Cir. 2006) (noting that "a defendant charged with multiple offenses but convicted of only

one offense cannot be ordered to pay restitution for losses resulting from the other charged offenses"); *United States v. Reed*, 80 F.3d 1419, 1422 (9th Cir. 1996) ("Ninth Circuit cases . . . prohibit the trial court from ordering restitution for conduct that is related to the offense of conviction, but that is not an element of the offense.").

Here, the offense to which Mr. Chaganlal pled guilty was making a false statement to the SEC.  The victim of this offense was the SEC.  *See Brogan v. United States*, 522 U.S. 398, 413 (1998) (Ginsburg, J. concurring) (noting that § 1001 was intended "to protect the Government from being the victim of some positive statement which has the tendency and effect of perverting normal and proper governmental activities and functions") (citation omitted); *accord United States v. Baker*, 626 F.2d 512, 516 (5th Cir. 1980) ("18 U.S.C. § 1001 is designed to protect federal funds and functions from fraudulent interference.").  Whatever secondary or tertiary effects Ross believes that Mr. Chaganlal's conduct may have had on Ross's business, Ross was not the direct victim of the offense of conviction and thus is not entitled to restitution from Mr. Chaganlal.  *See*, *e.g.*, *United States v. Schwartz*, No. 3:06crs (JBA), 2006 WL 1662899, at *3-5 (D. Conn. May 25, 2006) (holding that victim of § 1001 offense was the government, such that restitution was not available for "contingent or consequential losses" claimed by private party).[1]

## II. Ross's Claimed Losses Are Speculative and Were Not Proximately Caused By Mr. Chaganlal's Statements

Even if Ross were a victim of the offense of conviction, it would not be entitled to restitution because it cannot establish that the particular losses it claims were proximately caused by Mr. Chaganlal's offense.

---

[1] To be sure, restitution may be appropriate in § 1001 cases in which the entity to whom the false statements were made – *i.e.*, the direct victim of the § 1001 offense – suffered financial losses as a result of those statements.  *See*, *e.g.*, *United States v. Peterson*, 538 F.3d 1064 (9th Cir. 2008) (affirming restitution to HUD where defendant's false statements to HUD caused financial losses the agency); *United States v. Osorio*, 58 Fed. Appx. 875, 875 (2d Cir 2003) (affirming restitution to DEA where defendant's false statements to DEA deprived the agency of $63,000). This, however, is not such a case.

In its Victim Impact Statement, Ross asserted that, "[r]ather than answer the SEC's questions honestly which might have led to a quicker resolution of the investigations, Mr. Chaganlal lied." VIS, p. 2. Ross's theory is that because the company expended resources to assist the government in its investigation, it would have been cheaper for the company if Mr. Chaganlal had come clean during his initial interview with the SEC.

There are several problems with this argument. First, it is speculative. There is no way to know whether truthful answers to the SEC's questions would in fact have shortened the investigation. For one thing, the investigation targeted multiple individuals, not just Mr. Chaganlal. For another, it is far from clear that the SEC believed Mr. Chaganlal's answers or was thrown off the scent by his denials of wrongdoing.[2] Ross cannot plausibly contend that its expenditures on investigation would have been lower when it cannot show that the investigation would in fact have been shorter.

Second, as the government noted in its sentencing memorandum, the actual events in this case belie Ross's speculation that truthful statements by Mr. Chaganlal might have shortened the investigation and therefore reduced Ross's expenses. Dkt. 23 at 9-10. The government continued investigating and prosecuting its case against Mr. Khan for several months after Mr. Chaganlal corrected his untruthful statements, and even disclosure of Mr. Chaganlal's admissions to Mr. Khan did not bring the case to an end. *Id.* As such, it is not just "impossible to determine what if any costs incurred by Ross Stores would have been avoided had Mr. Chaganlal been truthful to the SEC"; "[o]n the contrary, it seems quite likely that those costs were unavoidable." *Id.* at 10.

Third, even if Ross could show that earlier truth-telling would have truncated the investigation, any resulting losses would be impossible to quantify. Restitution "is limited to the victim's *actual losses*," which are "determined by comparing what actually happened with what would have happened if the defendant had acted lawfully." *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010) (emphasis in original). Here, even if one assumes that the

---

[2] Ross does not appear to have believed Mr. Chaganlal, either. It terminated his employment less than two months after he was interviewed by the SEC.

investigation would have been shorter had Mr. Chaganlal told the truth, no one can say *how much* shorter.  Nor can one determine how a shorter investigation would have impacted Ross's role in the investigation or calculate how much less Ross would have expended as a result.  No matter what, the government would have requested documents and interviewed or subpoenaed witnesses from Ross in furtherance of its efforts to prove a criminal case against the defendants beyond a reasonable doubt.  Ross's claimed losses would thus have occurred even if Mr. Chaganlal had "acted lawfully" with respect to the offense of conviction.[3]  *Id.* at 1064; *see also Schwartz*, 2006 WL 1662899, at *5-6 (noting that "a victim cannot be compensated for moneys which it would have parted with in any event," and denying restitution where determination of any restitution amount flowing from false statements would be "far from simple") (citation and internal quotes omitted).

       Under these circumstances, Ross cannot assert a viable claim to restitution from Mr. Chaganlal.

## CONCLUSION

       For all of these reasons, the Court should find that Ross is not entitled to restitution from Mr. Chaganlal as a result of his § 1001 offense.

DATED:  October 16, 2019       Respectfully submitted,

By_____/s/_____
    JOSH A. COHEN
    Attorney for ROSHANLAL CHAGANLAL

---

[3] Notably, Mr. Chaganlal could have "acted lawfully" not just by answering the SEC's questions truthfully, but also by declining to answer them at all.  The latter possibility is yet another reason Ross's argument for restitution is too speculative to succeed.